## ROACH v. DeARMAN.

No. 19249.   Opinion Filed Feb. 11, 1930.

Rehearing Denied April 29, 1930.

Garrett & Jester and S. A. Horton, for plaintiff in error.

Keaton, Wells, Johnston & Barnes, and Percy Powers, for defendant in error.

FOSTER, C. The parties will be referred to herein as in the trial court.

On January 6, 1921, W. S. Bradshaw, being indebted to plaintiff in the sum of $2,000, together with his wife, Maggie Bradshaw, executed and delivered to plaintiff their promissory note therefor, due in one year. On January 3, 1922, the note was renewed for one year. On January 6, 1923, the debt was again extended, and a new note given. Some time between January 6, 1923, and December, 1923, Bradshaw sold certain property to defendant, R. E. Roach, the consideration being $2,000. As a part of this transaction, Roach orally agreed to pay the $2,000 Bradshaw owed to plaintiff. Roach executed two promissory notes for $1,000 each, payable to Bradshaw, and Bradshaw turned them over to plaintiff as collateral security for the $2,000 Bradshaw note held by plaintiff. On December 2, 1923, Roach sold the property back to Bradshaw and in this transaction Bradshaw executed two promissory notes, payable to Roach, one for $550 and one for $525.65, each due December 1, 1924. One of these notes is dated December 2, 1923, and the other January 26, 1924. To secure these notes, Bradshaw gave Roach a chattel mortgage covering the property sold, the same being certain garage equipment, tools, machinery, etc. Thereupon Roach, pursuant to his former agreement, paid plaintiff the sum of $1,000, thus reducing Bradshaw's indebtedness to plaintiff to $1,000. Plaintiff returned to Roach one of the $1,000 notes of Roach's to Bradshaw. Thereafter Roach delivered to plaintiff the two notes executed by Bradshaw to Roach, and requested the return of the other $1,000 note previously executed by Roach to Bradshaw, which plaintiff held as collateral security for the balance remaining unpaid on the original $2,000 note of Bradshaw to plaintiff. Plaintiff declined to surrender to Roach the other $1,000 note unless he (Roach) would endorse the two notes of $550 and $525.65. Thereupon Roach indorsed the two last-mentioned notes, and plaintiff delivered to him his other $1,000 note.

Bradshaw paid to plaintiff the interest on the $550 and $525.65 notes to December 26, 1925, and certain payments on his principal note, whereby the indebtedness was reduced to $962.50. On the last-named date, plaintiff, without the knowledge or consent of Roach, extended the time of payment of Bradshaw's principal indebtedness to him, and took from Bradshaw and his wife a new note for $962.50, dated December 26, 1925, due December 26, 1926. Upon failure to pay by either of the defendants, plaintiff commenced this action against certain defendants; the first cause of action declared upon being against defendants W. S. and Maggie Bradshaw on the $962.50, and the second cause of action against

all three defendants, based upon the two notes for $550 and $525.65, given as collateral security. After appropriate allegations as to the execution and delivery of these two notes and setting out copies thereof in full in his petition, plaintiff alleged:

"Third. That on the 2nd day of December, 1924, at the same time the said defendant Roach paid the sum of $1,000 cash, that the defendant Roach orally agreed with this plaintiff that if this plaintiff would extend the balance of the principal of the note of $2,000 of W. S. Bradshaw and Maggie Bradshaw dated January 6, 1925, and described in paragraph 1 herein, that he, said Roach, would indorse the notes of W. S. Bradshaw described in paragraph 2 of this petition, and would deposit the said two Bradshaw notes, with the indorsement of the defendant Roach, with the plaintiff as collateral security for the balance of said $2,000 note. That thereupon this plaintiff agreed to the same, and the said defendant Roach did deliver the said two notes dated December 2, 1924, to this plaintiff, and this plaintiff now has and ever since has had the physical possession of the same. That by reason of his said indorsement, the said defendant Roach became liable and bound for the payment of said notes.

"Fourth. That on the 26th day of December, 1926, the defendants, W. S. Bradshaw and Maggie Bradshaw, having paid all interest on the two notes herein described in this cause of action to December 1, 1925, and the sum of $37.50 on May 2, 1924, made, executed and delivered unto plaintiff the note described in first cause of action herein. That the notes described in this cause of action were again left with plaintiff as collateral security of the note described in the first cause of action, with the knowledge, consent and approval of the defendant, Roach."

Defendant Bradshaw made no defense, admitting at the trial that he owed plaintiff the amount sued for, to wit, $962.50, with interest and attorney's fees provided for in the notes. Defendant Roach, by his answer, denied that he was guarantor on the $962.50 note constituting plaintiff's first cause of action, or that he had promised to become liable on same; specifically denied that he ever promised to become primarily liable on any note signed by Bradshaw and his wife, and especially the notes mentioned in the second cause of action, and finally alleged:

"This defendant specially denies the allegations set forth in paragraph No. 4 of his second cause of action, and says that no such knowledge, consent, or approval was had and given by this defendant R. E.

Roach, and if the plaintiff renewed some other indebtedness owing plaintiff by the defendants W. S. Bradshaw and Maggie Bradshaw, it was done without such knowledge and · approval of this answering defendant, and this answering defendant is in no way or manner liable on the note sued upon in plaintiff's first cause of action."

The cause was tried to a jury, and at the close of the evidence, both plaintiff and defendant Roach moved for a directed verdict. The motion of plaintiff was sustained and that of defendant denied. Verdict for plaintiff was returned accordingly, and judgment rendered thereon for plaintiff against all defendants. From this judgment, defendant Roach appeals.

There are six assignments of error, but the only two presented in the briefs are as follows: (1) Error in directing a verdict for plaintiff; and (2) error in not directing a verdict for defendant Roach.

The contention of defendant is that he was, at most, a guarantor of the principal note of $2,000 from Bradshaw to plaintiff; that when plaintiff extended the time of payment thereon and took the new note from Bradshaw for $962.50, he did so without the knowledge or consent of Roach, and that he was thereby discharged under section 7790, subd. 6, C. O. S. 1921, which provides:

"A person secondarily liable on the instrument is discharged: * * *

'Sixth. By any agreement binding upon the holder to extend the time of payment or to postpone · the holder's right to enforce the instrument, unless the right of recourse against said party is expressly reserved."

We deem it unnecessary to review the evidence, except to say that we have carefully examined the record, and it appears therefrom that defendant Roach is supported in his contention that the principal note of defendant Bradshaw was extended and the new note taken by plaintiff, without the knowledge or consent of defendant Roach. He testified that he was not present when this was done, and had no knowledge thereof for sometime thereafter. There is some evidence tending to show that he knew about it and consented thereto, but, upon a motion for a directed verdict, the evidence must be taken in its most favorable light toward the party against whom the motion is directed.

"The same rules obtain in the direction of a verdict as obtain on a demurrer to the evidence." Myers v. Chamness, 114 Okla. 220, 245 Pac. 879.

A demurrer to the evidence admits the truth of all the evidence adduced to the party against whom it is directed, as well as all the facts which the evidence tends to establish. Myers v. Chamness, supra.

For the purpose of this case, then, it must be taken as true that defendant Roach had no notice of and did not consent to the extension of time of payment on Bradshaw's principal note.

Many cases are cited by defendant which hold that one secondarily liable is discharged by an agreement binding upon the holder to extend the time of payment, unless the agreement be made with the person's consent, or unless recourse against him be expressly reserved. This is admitted by plaintiff to be the general rule.

The question presented in this case is whether or not such consent was necessary, under the facts as disclosed by this record, and, if so, whether or not consent was given by the terms of the notes which the defendant indorsed. When Bradshaw delivered to the plaintiff, DeArman, the two notes for $1,000 each, signed by the defendant Roach, under an agreement between Roach and Bradshaw, it appears from this record that Roach became primarily liable to DeArman for the payment of the debt which theretofore had existed between DeArman and Bradshaw. This obligation on the part of the defendant seems to have been recognized when he paid to the plaintiff the $1,000 on the principal note and took up one of his notes which the plaintiff held as collateral security. Shortly thereafter Roach proposed to De Arman that he turn over to him the $550 and $525.65 notes which Bradshaw had executed, made payable to Roach, and this the plaintiff refused to do unless Roach would indorse these two notes. Thereupon Roach did indorse them, delivered them to plaintiff and secured in return his other $1,000 note. This, in our opinion, was simply a substitution of the two notes for the one note, and did not change the liability of the defendant. After the delivery to the plaintiff of these two notes, we believe he was still primarily liable for the indebtedness.

However, it is the contention of the defendant that this is not the theory on which this suit was prosecuted in the lower court, and that the pleadings did not support such a finding; that the theory of the plaintiff in the lower court was that these two notes were given as collateral security for the original indebtedness, and that the allegations of the petition so allege. If this be true, we

are still of the opinion that, under the facts here presented, the subsequent extension of time and the giving of the new note by the plaintiff was not sufficient to release Roach. No authorities from our court have been called to our attention directly in point, and those referred to from other states differ somewhat whom the facts here presented.

The case of Dunnington v. Bank of Crewe (Va.) 131 S. E. 221, is almost directly in point. In that case a corporation issued its own note, payable to itself, and secured the indorsement of the defendant thereon. This note so executed was delivered to the plaintiff as collateral security for another note, which was likewise signed by the corporation, made payable to itself, indorsed by the corporation, and delivered to the plaintiff, and the corporation received credit therefor after reasonable discount. The name of the defendant did not appear upon the principal note on which the loan was secured by the corporation from the plaintiff. Thereafter, the principal note was extended from time to time without the knowledge or consent of the defendant. In the extensions of the original note, however, it was stated that the plaintiff held the collateral note indorsed by the defendant as security. The Virginia court, in a very exhaustive opinion, held that, under these circumstances, the extension of time given to the corporation on the original note did not release the defendant, who was indorser on the collateral note, from liability, although the extensions were made without the consent of the defendant.

The sole question presented in that case was whether or not the several extensions of the indebtedness of the corporation served to release the defendant as an indorser. The collateral note in that case was given for the purpose of establishing a line of credit for the corporation, and there was some evidence in that case to show that the defendant or his representatives had agreed to the extension. But the decision goes further, and, in effect, holds that the defendant would not be released even though he had not agreed to the extension. The collateral notes in that case, as in the case at bar, provide that extensions may be made without the consent of the makers or indorsers. In discussing the case, the court quotes from Jones on Collateral Securities, section 518b, as follows:

"A surety on a note which is the principal debt is discharged by an extension of that note, without the surety's consent. A surety on the collateral note is not so discharg-

ed if the collateral note is an independent obligation resting on a distinct consideration; but, if the consideration of the principal note and of the collateral note are the same, an extension of the principal note without the consent of the surety discharges him."

After quoting the above, the court then says:

"The contention based thereon is that, inasmuch as the trunk corporation was the maker of both the principal and collateral notes, it should be held to be a single transaction, based upon one and the same consideration, and therefore that the indorsers on the collateral note assumed just the same and no greater liability than if they had been the indorsers of the principal note. Of course, if, under the facts of this case, this contention be correct, and Dunnington is held to be in the position of and subject only to the liability of an indorser of the principal note, then the extension of time without his consent, and renewal of the principal note after his death, without notice and consent, releases him as indorser. To uphold this contention, however, would be to ignore the contract which contemplated such renewals."

The court points out that the indorser (the defendant in that case) was not even a party to the principal note, and says that it cannot see how the action of the bank as the owner of the principal note could have prejudiced any of defendant's legal rights as indorser of the collateral note. So, in the case at bar, Roach was not even a party to the principal note, and his rights could not have been prejudiced by the extension of the indebtedness.

In the case of Commercial National Bank v. Sanders (La.) 71 So. 89, the fourth paragraph of the syllabus of the opinion is as follows:

"The payee's extension of time on a note did not release the accommodation indorsers on a collateral note, as what was done or not done in connection with the principal note did not concern them."

This case is attacked in the brief of defendant because it was under a different state of facts. In that case a note was given by a corporation, payable to the plaintiff, and another note was given by the same corporation, payable to the same plaintiff, and indorsed by the defendant as collateral security for the original note. The original note was extended without the consent of the indorser and the court held that the indorser was not released. The only difference in that case and to the case at bar is that the indorser and defendant there had no

interest in the note which was given as collateral security, while in the case at bar the indorser and defendant was the payee. We think the Louisiana case presents a stronger state of facts than does the case at bar. In both the Louisiana and Virginia cases above referred to, the indorsers and defendants were accommodation indorsers and received no value, while in the case at bar the indorser received a valuable consideration for his indorsement—that of the surrender by the plaintiff of the $1,000 note on which he was primarily liable. It may, however, be conceded that whether or not he received value makes no difference under the Negotiable Instrument Law.

The collateral notes in this case were made payable to Roach, signed by Bradshaw, and indorsed by Roach and delivered to DeArman by Roach. By paying the principal indebtedness due from Bradshaw to DeArman, Roach could have secured possession of the notes and enforced payment by suit or otherwise, according to their terms, against Bradshaw, at any time, without waiting the maturity of the original indebtedness between DeArman and Bradshaw. This is the test as was held in the case of National Park Bank v. Koehler (N. Y.) 97 N. E. 468.

The defendant relies chiefly upon the ruling in the case of Farmers & Merchants Bank x. Doffing (Minn.) 213 N. W. 375; but we have examined that case, and the facts are so different that we do not believe it controlling, or even persuasive in the case at bar.

The judgment of the district court is affirmed.

TEEHEE, HERR, JEFFREY, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.

Note.—See "Trial," 38 Cyc. p. 1543, n. 68, 69.